IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| JOHN BOYD, JR., *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22-1473 C |
| | ) | (Senior Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

FRANKLIN E. WHITE, JR.
Assistant Director

Of Counsel:

JUAN CARLOS ALARCON
Deputy Assistant General Counsel
Office of General Counsel
Department of Agriculture
1400 Independence Ave., SW
Washington, DC 20250-1400

March 10, 2023

DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 353-9303

Attorneys for Defendant

## <u>TABLE OF CONTENTS</u>

**Page:**

TABLE OF AUTHORITIES..................................................................................................... ii

INTRODUCTION..................................................................................................................... 1

QUESTIONS PRESENTED ..................................................................................................... 3

STATEMENT OF THE CASE ................................................................................................. 3

ARGUMENT ............................................................................................................................ 4

I.     Standard Of Review:  Rule 12(b)(6)................................................................................ 5

II.    The Court Should Dismiss Counts I And II Of The Complaint Because There Is No Express Or Implied-In-Fact Contract Between The United States And Either Ms. Williams Or Mr. Bonner Pursuant To ARPA Section 1005 .................................... 7

      A.    There Is No Mutuality Of Intent To Contract In The Section 1005 Program........ 8

      B.    There Is No Unambiguous Offer And Acceptance In The Section 1005 Program.................................................................................................................... 9

      C.    There Was No Consideration Exchanged In The Section 1005 Program............ 13

      D.    Government Officials Administering The Section 1005 Program Did Not Have Actual Contracting Authority.................................................................... 15

III.   The Court Should Dismiss Count III Of The Complaint Because ARPA Section 1006 Is Not An Implied-In-Fact Contract Between The United States And The Boyds ........................................................................................................................... 17

      A.    There Is No Mutuality Of Intent To Contract In Section 1006.......................... 17

      B.    There Is No Unambiguous Offer And Acceptance In Section 1006.................. 19

      C.    There Was No Consideration Exchanged For Congress Enacting Section 1006........................................................................................................ 21

CONCLUSION....................................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases:**                                                                          **Page(s):**

*Acceptance Ins. Co. v. United States*, 583 F.3d 849 (Fed. Cir. 2009)..........................................6

*Allen Eng'g Contr., Inc. v. United States*, 115 Fed. Cl. 457 (2014) ...........................................13

*Am. Bankers Ass'n v. United States*, 932 F.3d 1375 (Fed. Cir. 2019) ...........4, 8, 9, 10, 17, 18, 19

*Anderson v. United States*, 344 F.3d 1343 (Fed. Cir. 2003) ....................................................4, 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....................................................................................6, 7

*Bay View, Inc. v. United States*, 278 F.3d 1259 (Fed. Cir. 2001)............................................4, 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)...............................................................6, 7

*Bell/Heery v. United States*, 739 F.3d 1324 (Fed. Cir. 2014)....................................................6, 7

*Crewzers Fire Crew Transp., Inc. v. United States*, 741 F.3d 1380 (Fed. Cir. 2014)............13, 21

*Dimare Fresh, Inc. v. United States*, 808 F.3d 1301 (Fed. Cir. 2015)..................................13-14

*Dodge v. Bd. of Educ.*, 302 U.S. 74 (1937) ................................................................................18

*Estate of Bogley v. United States*, 514 F.2d 1027 (Ct. Cl. 1975)................................................11

*Fisher v. United States*, 402 F.3d 1167 (Fed. Cir. 2005).............................................................7

*Girling Health Sys., Inc. v. United States*, 22 Cl. Ct. 66 (1990).................................................9

*H. Landau & Co. v. United States*, 886 F.2d 322 (Fed. Cir. 1989).......................................15, 16

*Hercules, Inc. v. United States*, 516 U.S. 417 (1996)................................................................14

*Holman v. Vilsack*, No. 21-1085, 2021 U.S. Dist. LEXIS 127334, 2021 WL 2877915
    (W.D. Tenn. July 8, 2021) ....................................................................................................2

*Jackson v. United States*, 162 Fed. Cl. 282 (2022)..............................................................14-15

*Kraft, Inc. v. United States*, 85 F.3d 602 (Fed. Cir. 1996).........................................................6

*Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308 (2020)....................................16

*Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451 (1985)..18, 19

*Schism v. United States*, 316 F.3d 1259 (Fed. Cir. 2002).........................................................19

*Seuss v. United States*, 535 F.3d 1348 (Fed. Cir. 2008) ...........................................................17

**TABLE OF AUTHORITIES (continued)**

**Cases (continued):**                                                                 **Page(s):**

*Sin Hang Lee v. United States*, 142 Fed. Cl. 722 (2019) ........................................... 11

*Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409 (1986) ............................. 6

*Terry v. United States*, 103 Fed. Cl. 645 (2012) ........................................ 13

*Todd Constr., L.P. v. United States*, 656 F.3d 1306 (Fed. Cir. 2011) ...................................6, 7

*United States v. Mitchell*, 463 U.S. 206 (1983) ........................................ 14

*Wynn v. Vilsack*, 545 F. Supp. 3d 1271 (M.D. Fla. 2021) .......................................2, 10

*XP Vehicles, Inc. v. United States*, 121 Fed. Cl. 770 (2015) ..................................................9, 12

*6601 Dorchester Inv. Grp., LLC v. United States*, 154 Fed. Cl. 685 (2021) ........................15, 16

**Statutes:**

American Rescue Plan Act of 2021 (ARPA), Pub. L. No. 117-2, 135 Stat. 4 (2021) ..........*passim*

Inflation Reduction Act of 2022 (IRA), Pub. L. No. 117-169, 136 Stat. 1818 (2022) ..... 3, 4, 8, 17

7 U.S.C. § 2279 ......................................................................................................... 1

**Rules:**

Fed. R. Civ. P. 12 ........................................................................................................ 6

RCFC 8 ........................................................................................................................ 5

RCFC 12 ...................................................................................................................1, 6

**Other Authorities:**

*Notice of Funds Availability; ARPA Section 1005*, 86 Fed. Reg. 28,329
        (Dep't of Agriculture May 26, 2021) ....................................................10, 11

*Notice of Request for Public Comment on Providing Financial Assistance for Producers
        and Landowners Determined To Have Experienced Discrimination*, 87 Fed. Reg.
        62,359 (Dep't of Agriculture Oct. 14, 2022) .................................................. 3

*Submission for OMB Review*, 86 Fed. Reg. 58,859 (Dep't of Agriculture Oct. 25, 2021) ............ 2

USDA Notice FSFL-178 (June 28, 2021) ..........................................................11, 12

**TABLE OF AUTHORITIES (continued)**

**Other Authorities (continued):**                                    **Page(s):**

2A James Wm. Moore & Jo Desha Lucas, Moore's Federal Practice (2d ed. 1996).................... 6

5B C. Wright & A. Miller, Federal Practice & Procedure (3d ed. 2004 & Supp. 2009)......6, 7, 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| JOHN BOYD, JR., *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 22-1473 C |
| | ) | (Senior Judge Damich) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), defendant, the United States, respectfully requests that the Court dismiss the complaint (Compl.) filed by plaintiffs, John Boyd, Jr., Kara Boyd, Lester Bonner, and Princess Williams, for failure to state a claim upon which relief can be granted. In support of this motion, we rely on the following brief and the accompanying appendix (DA).

DEFENDANT'S BRIEF

INTRODUCTION

This case pertains to two sections of the American Rescue Plan Act of 2021 (ARPA), Pub. L. No. 117-2, §§ 1005-1006, 135 Stat. 4, 12-14 (2021), and Executive actions by the Department of Agriculture's (USDA) Farm Service Agency (FSA).

ARPA section 1005 directed the Secretary of Agriculture (Secretary) to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher" (SDF) as of January 1, 2021, on certain loans "made" or "guaranteed" by the Secretary (FSA loans). ARPA § 1005(a)(2); *see also* 7 U.S.C. § 2279(a)(5) (definition of "socially disadvantaged farmer or rancher"). To facilitate implementation of

section 1005, FSA created form FSA-2601 in May 2021 to provide eligible SDFs with notice of
an opportunity to "accept," "discuss," or "decline" "financial assistance" pursuant to ARPA
section 1005. *Submission for OMB Review*, 86 Fed. Reg. 58,859 (Dep't of Agriculture Oct. 25,
2021). SDFs had to return form FSA-2601 if they wished to certify their eligibility, accept
FSA's benefit calculations, and "request payment." *Id.* Each FSA-2601 states that the
information requested on the form "will be used" by FSA "in order to process the customer's
request for payment according to ARPA and applicable regulations," and that a "failure to
furnish the requested information may result in a determination that FSA cannot process the
customer's request for payment." Compl. Ex. 1 at 3; DA3, DA8.

ARPA section 1006 established a variety of programs and funding to address
longstanding inequities for socially disadvantaged borrowers. One of those programs directed
the Secretary "to provide financial assistance" to certain SDFs who "suffered related adverse
actions or past discrimination or bias in Department of Agriculture programs, as determined by
the Secretary." ARPA § 1006(b)(5). Congress appropriated not less than $50.5 million for this
purpose. *Id.* § 1006(a), 1006(b)(5).

FSA borrowers who were not eligible for section 1005 payments filed at least a dozen
separate lawsuits claiming that the program violated the equal protection component of the Due
Process Clause of the Fifth Amendment by limiting eligibility to SDFs. Several district courts
issued preliminary injunction orders prohibiting FSA from issuing any payments to SDFs
pursuant to section 1005. *See Holman v. Vilsack*, No. 21-1085, 2021 U.S. Dist. LEXIS 127334,
2021 WL 2877915 (W.D. Tenn. July 8, 2021); Order, *Miller v. Vilsack*, No. 4:21-cv-595 (N.D.
Tex.), July 1, 2021, ECF No. 60; *Wynn v. Vilsack*, 545 F. Supp. 3d 1271 (M.D. Fla. 2021). The
injunctions nevertheless allowed FSA to take any administrative steps short of issuing the ARPA

section 1005 payments, such that in the event the Government prevailed in the litigation, the ARPA payments would not be delayed.

Congress subsequently passed the Inflation Reduction Act of 2022 (IRA), which repealed ARPA section 1005 and amended ARPA section 1006. Pub. L. No. 117-169, §§ 22007-08, 136 Stat. 1818, 2021-23 (2022). Specifically, the IRA repealed ARPA section 1005, which had authorized USDA to make payments to certain SDFs with FSA loans. *Id.* § 22008. The IRA also deleted the references in ARPA section 1006(b)(5) to "socially disadvantaged" farmers, and broadened section 1006(b)(5) program eligibility to all farmers, while increasing the program funding from $50.5 million to $2.2 billion. *Id.* § 22007; *see also Notice of Request for Public Comment on Providing Financial Assistance for Producers and Landowners Determined To Have Experienced Discrimination*, 87 Fed. Reg. 62,359 (Dep't of Agriculture Oct. 14, 2022).

## QUESTIONS PRESENTED

1. Whether counts I and II should be dismissed for failure to state a plausible claim for breach of an express or implied-in-fact contract, because unfulfilled requests for financial assistance under ARPA section 1005 are not sufficient to form a contract as a matter of law.

2. Whether count III should be dismissed for failure to state a plausible claim for breach of an implied-in-fact contract, because the enactment of ARPA section 1006(b)(5) by Congress did not form a contract with individual private citizens as a matter of law.

## STATEMENT OF THE CASE

The four named plaintiffs in this putative class action allege that they are socially disadvantaged farmers (or SDFs). Compl. ¶¶ 1, 19-22.

Two of the four named plaintiffs, Ms. Williams and Mr. Bonner, allege that they submitted FSA-2601 forms requesting financial assistance payments pursuant to ARPA section

1005 and that the submission of these forms gave rise to an express or an implied-in-fact

contract.  Compl. ¶¶ 24-57, 97-108; *see also* DA1-10 (FSA-2601 forms submitted by

Ms. Williams and Mr. Bonner).  They further allege in counts I and II of the complaint that these

purported contracts were breached when they did not receive any assistance payments and when

Congress repealed ARPA section 1005 in the IRA.  Compl. ¶¶ 58-62.

The remaining two plaintiffs, Mr. and Mrs. Boyd (the Boyds), allege that they "lobbied"

President Joseph Biden and Senator Cory Booker with an "offer" not to sue the Government on

discrimination claims in exchange for enactment of ARPA section 1006, that Congress

"accepted" this offer and entered into an implied-in-fact contract with them by enacting this

section, and that Congress breached this purported "contract" by amending the section.  Compl.

¶¶ 11-12, 63-80, 109-114.

<u>ARGUMENT</u>

All of the claims in the complaint should be dismissed on contract formation grounds.

Plaintiffs' factual allegations do not state a plausible claim that they formed any contract with the

United States, whether express or implied-in-fact.  "In the absence of factual disputes, the

question of contract formation is a question of law."  *Bay View, Inc. v. United States*, 278 F.3d

1259, 1263 (Fed. Cir. 2001) (affirming dismissal of implied-in-fact contract claim for failure to

state a claim).  To satisfy their burden at the pleadings stage, plaintiffs must allege well-pleaded

facts that, if taken as true, would establish all four elements of contract formation:

"'(1) mutuality of intent to contract; (2) lack of ambiguity in offer and acceptance;

(3) consideration; and (4) a government representative having actual authority to bind the United

States.'"  *See*, *e.g.*, *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1381-82 (Fed. Cir. 2019)

(quoting *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003)).  The unfulfilled

requests for financial assistance made by Ms. Williams and Mr. Bonner under the ARPA section 1005 program, and the unfulfilled desire for the Boyds to receive financial assistance under the ARPA section 1006 program, do not establish all of the essential elements of contract formation.

Public legislation and subsequent Executive actions attempting to implement a financial assistance program are not sufficient to form a contract with private citizens unless an intent to contract is unequivocally expressed. There is no expression of an intent to contract in sections 1005 and 1006(b)(5) of ARPA. In counts I and II, Ms. Williams and Mr. Bonner allege that FSA officials entered into contracts with them to provide financial assistance under ARPA section 1005, but there are no indicia that Congress intended for FSA officials to do so. In count III, the Boyds allege that Congress itself entered into a contract with them to provide financial assistance under section 1006(b)(5), but there is a presumption that public legislation is not a contract with individual citizens, and there is no clear manifestation of an intention by Congress to do so.

Likewise, plaintiffs do not allege the existence of any unambiguous expression by Government officials of an intent to enter into a contract with them as program participants, that there was an unambiguous offer and acceptance, or that they offered cognizable consideration to the Government. These pleading deficiencies exist in all three counts of the complaint. Counts I and II of the complaint also fail because plaintiffs do not allege action by a government official with actual authority to enter into a contract on behalf of the United States. ARPA sections 1005 and 1006(b)(5) established financial assistance programs, not contractual undertakings. Thus, the entire complaint should be dismissed for failure to state a plausible claim for relief.

I.      Standard Of Review:  Rule 12(b)(6)

Rule 8 requires a "short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2). Rule 12(b)(6) provides that "a party may assert . . . by

motion" the defense of "failure to state a claim upon which relief may be granted." RCFC

12(b)(6). To survive a motion to dismiss, the complaint must contain *well-pleaded facts*

regarding the *essential elements* of a *plausible claim* for relief. *Ashcroft v. Iqbal*, 556 U.S. 662,

677-80, 686 (2009) (interpreting Fed. R. Civ. P. 12(b)(6)); *Bell Atlantic Corp. v. Twombly*, 550

U.S. 544, 555-63, 570 (2007) (same);[1] *Bell/Heery v. United States*, 739 F.3d 1324, 1330 (Fed.

Cir. 2014) (citing *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570).

Only "well-pleaded" factual allegations are accepted as true for purposes of a motion to

dismiss. *Iqbal*, 556 U.S. at 679; *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S.

409, 411 (1986); *Bell/Heery*, 739 F.3d at 1330. "However, legal conclusions, deductions, or

opinions couched as factual allegations are not given a presumption of truthfulness." 2A James

Wm. Moore & Jo Desha Lucas, Moore's Federal Practice, ¶ 12.07 [2.-5] at 12-84 – 12-85 & n.6

(2d ed. 1996) (collecting cases, interpreting Fed. R. Civ. P. 12(b)(6)); *accord Todd Constr., L.P.*

*v. United States*, 656 F.3d 1306, 1316 (Fed. Cir. 2011) ("we are not required to assume that legal

conclusions are true"); *Acceptance Ins. Co. v. United States*, 583 F.3d 849, 853 (Fed. Cir. 2009)

("a court is not bound to accept as true a legal conclusion couched as a factual allegation")

(citation, internal quotation marks omitted). In contrast to well-pleaded facts, "legal

conclusions," "unsupported conclusions," and "unwarranted inferences" do not suffice to support

a claim. 5B C. Wright & A. Miller, Federal Practice & Procedure § 1357 at 521-40 (3d ed. 2004

& Supp. 2009) (Wright & Miller) (collecting cases, interpreting Fed. R. Civ. P. 12(b)(6)); *accord*

*Bell/Heery*, 739 F.3d at 1330 ("legal conclusions" are not accepted as true on motion to dismiss).

---

[1]  Court of Federal Claims Rule 12(b)(6) is identical to Federal Rule of Civil Procedure
12(b)(6). *Compare* RCFC 12(b)(6), *with* FED. R. CIV. P. 12(b)(6). "The precedent interpreting
the Federal Rules of Civil Procedure applies with equal force to the comparable Rules of the
Court of Federal Claims." *Kraft, Inc. v. United States*, 85 F.3d 602, 605 n.6 (Fed. Cir. 1996).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570); *Bell/Heery*, 739 F.3d at 1330 (quoting *Iqbal*, 556 U.S. at 678). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the" claim. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *accord Todd Constr.*, 656 F.3d at 1316 (quoting *Iqbal*). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task" that depends upon "the elements a plaintiff must plead to state a claim." *Id.* at 675, 678. The complaint must contain well-pleaded factual allegations "respecting all the material elements necessary to sustain recovery under some viable theory." *Twombly*, 550 U.S. at 562 (quoting *Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)); *accord Fisher v. United States*, 402 F.3d 1167, 1175-76 (Fed. Cir. 2005) (the complaint "fail[s] to state a claim on which relief can be granted" unless well-pleaded facts "establish all elements of the cause of action."); 5B Wright & Miller § 1357 at 683 (complaint "must set forth sufficient information to outline the elements of a viable claim for relief or to permit inferences to be drawn from the complaint that indicate that these elements exist"). If the plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

II.    **The Court Should Dismiss Counts I And II Of The Complaint Because There Is No Express Or Implied-In-Fact Contract Between The United States And Either Ms. Williams Or Mr. Bonner Pursuant To ARPA Section 1005**

Ms. Williams and Mr. Bonner allege that they submitted FSA-2601 forms requesting financial assistance payments under ARPA section 1005 and that the submission of these forms gave rise to an express or implied-in-fact contract. Compl. ¶¶ 24-57, 97-108; *see also* DA1-10. They further allege in counts I and II of the complaint that these contracts were breached when

they did not receive any assistance payments and when Congress repealed ARPA section 1005 in the IRA.  Compl. ¶¶ 58-62.

These allegations do not state a well-pleaded claim for breach of an express or implied contract.  As demonstrated below, counts I and II fail to properly allege *any* of the essential elements of contract formation.

A.    <u>There Is No Mutuality Of Intent To Contract In The Section 1005 Program</u>

When analyzing a statutory program for the Government's intent to contract, courts "will not infer a contractual undertaking absent an adequate expression of an actual intent."  *Am. Bankers*, 932 F.3d at 1382 (quotations omitted).  Here, Ms. Williams and Mr. Bonner allege that FSA officials entered into contracts with them as part of the statutory scheme under section 1005.  However, there are no indicia that Congress intended for USDA (or FSA) to enter into contracts with SDFs, such as Ms. Williams and Mr. Bonner, as part of the section 1005 program.

ARPA section 1005 established a statutory program to provide "farm loan assistance" to SDFs.  ARPA § 1005.  Section 1005 directed the Secretary "to provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher as of January 1, 2021, to pay off the loan directly or to the socially disadvantaged farmer or rancher (or a combination of both), on" FSA loans.  *Id.*  In other words, Congress created a financial assistance program with clear eligibility criteria (SDFs with outstanding indebtedness on FSA loans), Congress proscribed a formula for the amount of financial assistance payments (120 percent of the outstanding indebtedness as of January 1, 2021), and Congress directed to whom the financial assistance payments should be made (to the lender, the SDF, or a combination of both).  *See id.*  Section 1005 did not provide for the Government to enter into contracts with SDFs or otherwise call for an exchange of bargained-for consideration as a precondition to receive this financial assistance.  *See id.*  The text of section 1005 is devoid of

any requirement that SDFs provide *anything* in exchange for a payment by the Government. *See id.* There is no mention of contracts to be negotiated or consideration to be exchanged in this financial assistance program. *See id.*

As a matter of law, the essential element of Government intent to contract is absent from the section 1005 program. The program reflects Congress' intent only to "declare[] a policy to be pursued until the legislature shall ordain otherwise," not an intent "to create private contractual or vested rights." *See Am. Bankers*, 932 F.3d at 1381 (citation omitted).

B.    There Is No Unambiguous Offer And Acceptance In The Section 1005 Program

The claims by Ms. Williams and Mr. Bonner in counts I and II also fail for lack of an unambiguous offer and acceptance. Ms. Williams and Mr. Bonner allege that the FSA-2601 forms were an "offer" from the Government which they accepted by signing and returning them to FSA. Compl. ¶¶ 4-6, 35-42. However, the FSA-2601 form states that the SDF recipients were "eligible for payment" under ARPA section 1005, and the form "will be used" by FSA "in order to process the" SDF's "request for payment according to ARPA and applicable regulations." Compl. Ex. 1 at 3; DA1, DA3, DA6, DA8. Communications from the Government of this sort are not offers that form a binding contract upon filling in the blanks of a Government-prepared form. *XP Vehicles, Inc. v. United States*, 121 Fed. Cl. 770, 787 (2015) ("It is well recognized that 'mere solicitations, invitations[,] or instructions from the [g]overnment are not offers to contract that bind the [g]overnment upon [a] plaintiff's completion of a form, even when the solicitations, invitations or instructions are embodied in a statute or regulation.'") (alterations in original, quoting *Girling Health Sys., Inc. v. United States*, 22 Cl. Ct. 66, 71-72 (1990)). Rather, the FSA-2601 forms were notices of program eligibility and the means by which SDFs could certify their eligibility and request financial assistance under ARPA section 1005. *See* DA1-10. This is not an unambiguous offer to enter into a binding contract.

Moreover, the Government generated the FSA-2601 forms addressed to Mr. Bonner and Ms. Williams in June and September 2021, respectively, DA1, DA6, at times when one or more preliminary injunctions already prohibited the Government from making any payments under section 1005. *See, e.g., Wynn v. Vilsack*, 545 F. Supp. 3d 1271 (M.D. Fla. 2021). The Government could not, and did not, unambiguously offer binding contractual commitments to make payments under section 1005, when at the same time, one or more district courts expressly had prohibited the Government from making such payments. *See id.* Rather, at that time, the preliminary injunction orders allowed the Government "to prepare to effectuate the relief under [s]ection 1005 in the event it is ultimately found to be constitutionally permissible." *Id.* at 1295 n.19. That is what the Government was doing when it transmitted FSA-2601 forms to Ms. Williams and Mr. Bonner, gathering information from these SDFs to prepare for the possibility that section 1005 payments might begin sometime in the future. *See* DA1-10.

Ms. Williams and Mr. Bonner also seize upon the terms "offer" and "acceptance" in FSA's Notice of Funds Availability published in the *Federal Register*, and they label these statements as an offer and acceptance *of a contract.* Compl. ¶¶ 43, 49; *Notice of Funds Availability; ARPA Section 1005*, 86 Fed. Reg. 28,329 (Dep't of Agriculture May 26, 2021). But to form a contract, there must be an *unambiguous* offer and acceptance, not merely a use of those terms. *See, e.g., Am. Bankers*, 932 F.3d at 1382. In the Notice of Funds Availability, the Government *defined* those terms in the context of describing how the 1005 program worked. *Id.* at 28,330-31. The FSA-2601 forms notified eligible SDFs of FSA's payment calculations, provided SDFs with three options to accept, discuss, or decline the financial assistance, and required SDFs to certify their eligibility for the program under penalty of perjury. Compl. Ex. 1 at 1-3; DA1-3, DA6-8. Referring to the FSA-2601 form itself, the Notice of Funds Availability

defined "*Offer notice*" as "the letter sent to eligible borrowers that will notify them of the payment amount, obtain direct deposit information and verify eligible and ineligible loans." *Notice of Funds Availability; ARPA Section 1005*, 86 Fed. Reg. at 28,330. The Notice of Funds Availability also defined "Acceptance of the offer" as "concurrence with the payment calculations and the indicated distribution of funds, and verification as eligible recipients." *Id.* at 28,331. The Notice of Funds Availability thus described the notices to SDFs as an opportunity to accept the financial assistance that FSA calculated for them under the ARPA section 1005 program. *See id.* at 28,329-32. Once again, this is not an unambiguous expression of an intent to enter into a binding contract. Indeed, these statements in the *Federal Register* were directed to the general public and cannot be construed as an unambiguous offer to contract with Ms. Williams, Mr. Bonner, or any specific SDF. *Cf. Anderson*, 344 F.3d at 1353 ("an offer is made by the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it") (citations and internal quotation marks omitted); *Estate of Bogley v. United States*, 514 F.2d 1027, 1032 (Ct. Cl. 1975) ("Since an offer must be a promise, a mere expression of intention or general willingness to do something on the happening of a particular event or in return for something to be received does not amount to an offer.") (citation omitted); *Sin Hang Lee v. United States*, 142 Fed. Cl. 722, 731 (2019) (holding that a government official's public statement was not an offer to enter into an implied-in-fact contract).

Ms. Williams and Mr. Bonner also point to an internal USDA notice to state and county FSA offices, which uses the terms "offer" and "acceptance," and they label these terms as an offer and acceptance *of a contract*. Compl. ¶¶ 43-48 (citing Notice FSFL-178 (June 28, 2021), *available at* www.fsa.usda.gov/Internet/FSA_Notice/fsfl_178.pdf (last visited Feb. 15, 2023)).

But Notice FSFL-178 does not purport to alter the meaning of those terms as set forth in the
Notice of Funds Availability that issued one month earlier, and it does not purport to alter the
FSA-2601 form itself.  Notice FSFL-178 merely states that each FSA-2601 form "will serve as
the offer letter and be used to notify" SDFs "of the ARPA offer amount" and will "serve as
written notification of an offer for an ARPA payment."  Notice FSFL-178 at 4-5.  This internal
USDA communication was not directed to SDFs generally or to plaintiffs specifically, and thus
cannot be construed as an unambiguous offer to contract.  *See XP Vehicles*, 121 Fed. Cl. at 785-
87 (holding that the plaintiff's completion of applications for a statutorily enacted loan program
did not form a contract with the United States and was not a guarantee of funds).

Finally, Ms. Williams alleges that she spoke to an unidentified "FSA representative"
about "her FSA-2601," who "informed" her "that selecting Option 1 would lock her into the U.S.
Government's payment calculation" and "that selecting Option 1 was in" her "best interests."
Compl. ¶ 50.  However, Ms. Williams does not allege that the "FSA representative" with whom
she spoke ever made an offer or ever offered something different from what was set forth in the
FSA-2601.  *See id.*  Rather, plaintiffs admit that FSA representatives were "not authorized to
create or modify the [FSA-2601] offer letter which includes the payment calculation worksheet."
*Id.* ¶ 49.  Accordingly, any oral statements made to Ms. Williams by an FSA representative
cannot be construed as modifying the FSA-2601 form into an unambiguous offer to contract. [2]

In sum, the plain language of ARPA section 1005 and the FSA documents all show that
the FSA-2601 forms were part of FSA's administrative action to facilitate Congress' mandate to
provide financial assistance to SDFs.  Nowhere did the Government or plaintiffs unequivocally
offer to form an express or implied contract by a written instrument or their conduct.

---

[2] As discussed below (§ II-D), these allegations also fail for lack of actual authority.

C.    There Was No Consideration Exchanged In The Section 1005 Program

"To be valid and enforceable, a contract must have both consideration to ensure mutuality of obligation . . . and sufficient definiteness so as to provide a basis for determining the existence of a breach and for giving an appropriate remedy." *Crewzers Fire Crew Transp., Inc. v. United States*, 741 F.3d 1380, 1382 (Fed. Cir. 2014) (citation omitted). Ms. Williams and Mr. Bonner did not provide any consideration when they requested payment of section 1005 funds.

Ms. Williams and Mr. Bonner allege that the Government "induce[d]" SDFs to accept the Government's payment calculations as provided in the FSA-2601 forms and to "waive" their right to challenge the Government's calculations. Compl. ¶ 41. However, the FSA-2601 form expressly provided SDFs with the option (denominated "Option 2") to meet with FSA officials, either by phone or in person, to "disagree with the calculation," identify "an error," or "disagree with the payment distribution," without waiving any right to request payment. Compl. Ex. 1 at 3; DA3, DA8. SDFs also had options to "accept" FSA's payment calculations ("Option 1") or to decline to receive a payment altogether ("Option 3"). Compl. Ex. 1 at 1, 3; DA1-3, DA6-8. The SDFs were free to select any of the three options, and they did not provide any consideration to the agency regardless of their selection of option 1, 2 or 3. *See id.* Indeed, the FSA-2601 form does not include the word "waiver" or any other release language. *See id.* Thus, it is manifest from the face of the FSA-2601 form that the Government did not bargain for, or receive, any consideration from SDFs arising from or depending upon the option they selected on the FSA-2601 form. *See id.* When, as in this case, a complaint's characterization of a document conflicts with the document itself, the document controls on a Rule 12(b)(6) motion to dismiss. *E.g.*, *Allen Eng'g Contr., Inc. v. United States*, 115 Fed. Cl. 457, 464 (2014), *aff'd*, 611 F. App'x 701, 705 (Fed. Cir. 2015); *Terry v. United States*, 103 Fed. Cl. 645, 654 (2012); *see also Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1306 (Fed. Cir. 2015) (on a motion to dismiss, courts

are "'not limited to the four corners of the complaint'" and "may also look to 'matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record'") (quoting 5B Wright & Miller § 1357).

Ms. Williams and Mr. Bonner also allege that the Government benefited from borrowers selecting "Option 1" because, by accepting quicker loan payments and maintaining or expanding their farming operations, it would support the Government's "pandemic response and recovery efforts." Compl. ¶ 99(c). This amorphous allegation of consideration is not sufficient for several reasons. First, it is not recited anywhere in ARPA section 1005 or the FSA-2601 form. Second, Ms. Williams and Mr. Bonner do not allege that they promised to devote the section 1005 payment proceeds to maintaining or expanding their farming operations, and such a promise was not a requirement to receive financial assistance under section 1005 in any event. Third, merely accepting payment from another party is not a *mutual* exchange of consideration. SDFs (including Ms. Williams and Mr. Bonner) did not provide any consideration in exchange for receiving a statutory payment in accordance with the eligibility criteria and calculation formula proscribed by Congress in ARPA section 1005. Fourth, to the extent plaintiffs allege detrimental reliance upon a purported promise by the Government to make payments under section 1005, Compl. ¶¶ 60, 102, 108, this is an implied-in-law contract theory that is not cognizable in this Court. *See Hercules, Inc. v. United States*, 516 U.S. 417, 423 (1996) ("We have repeatedly held that [Court of Federal Claims] jurisdiction extends only to contracts either express or implied in fact, and not to claims on contracts implied in law."); *United States v. Mitchell*, 463 U.S. 206, 218 (1983) ("[W]e have held that the [Tucker] Act does not reach claims based on contracts implied in law, as opposed to those implied in fact."); *Jackson v. United States*, 162 Fed. Cl. 282, 293-94 (2022) (collecting cases, dismissing detrimental reliance claim for lack of subject matter

jurisdiction). Finally, the FSA-2601 forms include an explicit disclaimer that "it may take several weeks or more for FSA to process the payment," which runs contrary to any suggestion that time was of the essence. Compl. Ex. 1 at 2; DA2, DA7.

For these reasons, there is no consideration provided by the plaintiffs that could give rise to an express or implied-in-fact contract in counts I or II.

D.    Government Officials Administering The Section 1005 Program Did Not Have Actual Contracting Authority

"In order for a government representative to bind the United States in contract, he [or she] must have actual authority; apparent authority will not suffice to bind the government by acts of its agents." *6601 Dorchester Inv. Grp., LLC v. United States*, 154 Fed. Cl. 685, 692 (2021) (citing, among other cases, *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989)). In this case, no official was conferred with contracting authority by ARPA section 1005.

Congress expressly conferred contracting authority at least seven times in other ARPA programs. Specifically, Congress authorized the Secretary of Health and Human Services to award "grants or contracts" for medical assistance services to specified health professionals (section 2703(b)), the Indian Health Service (section 9815), and the Papa Ola Lokahi (section 9815). Congress also authorized the Administrator of the Small Business Administration to "contract with . . . [firms] to provide technical assistance to business enterprises" (section 3301(b)) and to make grants or contracts with entities to provide free navigator services (section 5004(b)(1)); to enter contracts or grants for wildlife tracking and care for endangered species (section 6003(a)); and to contract with quality improvement organizations to provide infection control support to nursing facilities (section 9401).

By contrast, ARPA section 1005 did not include any language authorizing USDA (or FSA) to enter into contracts on behalf of the United States as part of that "farm loan assistance" program.  ARPA § 1005.  Given that Congress included specific contracting authority in many ARPA sections but omitted it from section 1005, Congress presumably "intended a difference in meaning" and did not intend for USDA (or FSA) officials to enter into contracts when making statutory payments under section 1005. *See Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1323 (2020) (citation omitted).

In addition, Ms. Williams and Mr. Bonner received FSA-2601 forms from county "program technicians."  DA3, DA8.  The complaint does not (and cannot) allege any well-pleaded facts to establish that county program technicians had actual authority to make contracts for section 1005 program payments. *See* Compl. ¶ 99(d).  The complaint also does not (and cannot) allege that administrative staff who serve in county program technician positions have actual contracting authority for the section 1005 program as an integral part of their duties. *See 6601 Dorchester Inv. Grp.*, 154 Fed. Cl. at 692 ("Actual authority may be implied, rather than express, 'when such authority is considered to be an integral part of the duties assigned to a government employee.'") (quoting *H. Landau*, 886 F.2d at 324).  To the contrary, the complaint admits that "State and County Offices are not authorized to create or modify the offer letter which includes the payment calculation worksheet."  Compl. ¶ 48.

Because the complaint fails to allege well-pleaded facts showing that a Government official had actual authority to contract with them, counts I and II fail for this additional and independent reason.

III.    The Court Should Dismiss Count III Of The Complaint Because ARPA Section 1006 Is
        <u>Not An Implied-In-Fact Contract Between The United States And The Boyds</u>

The Boyds allege that they "lobbied" President Joseph Biden, Senator Cory Booker, and

other unidentified "Government officials" with an "offer" not to sue the Government on

discrimination claims in exchange for enactment of a provision in ARPA, "which directed

USDA 'to provide financial assistance to socially disadvantaged farmers, ranchers, or forest

landowners that are former farm loan borrowers that suffered related adverse actions or past

discrimination or bias in [USDA] programs,' in an amount exceeding $50,000,000." Compl.

¶ 69-75 (quoting ARPA § 1006(b)(5)). The Boyds further allege that Congress "accepted" this

offer and entered into an implied-in-fact contract with them by enacting this provision in ARPA

section 1006(b)(5). *Id.* ¶ 75 (quoting ARPA § 1006(b)(5)). Finally, the Boyds allege that

Congress breached this purported "contract" by amending ARPA section 1006, such that "relief

is no longer set aside for SDFs," and now "relief is available for *any* "farmers, ranchers, or forest

landowners determined to have experienced discrimination . . . in [USDA] farm lending

programs." Compl. ¶¶ 77-78 (quoting IRA § 22007); *see also* Compl. ¶¶ 63-80, 109-114. These

allegations do not establish "(1) mutuality of intent to contract; (2) lack of ambiguity in offer and

acceptance;" or "(3) consideration." *See Am. Bankers*, 932 F.3d at 1381-82. Thus, count III

should be dismissed for failure to state a plausible claim for breach of an implied-in-fact

contract.

    A.    <u>There Is No Mutuality Of Intent To Contract In Section 1006</u>

To establish a valid contract with the Government, a plaintiff must allege and prove

mutuality of intent to contract. *Seuss v. United States*, 535 F.3d 1348, 1359 (Fed. Cir. 2008).

There is a presumption that Congress does not intend to bind itself contractually when passing a

public law, and there is no clear indication that Congress intended to enter into an implied-in-fact contract with the Boyds by enacting ARPA section 1006.

"'[A]bsent some clear indication that the legislature intends to bind itself contractually, the presumption is that a law is not intended to create private contractual or vested rights but merely declares a policy to be pursued until the legislature shall ordain otherwise.'" *Am. Bankers*, 932 F.3d at 1381 (quoting *Nat'l R.R. Passenger Corp. v. Atchison Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 465-66 (1985)). "This 'well-established presumption' reflects a recognition that 'the principal function of a legislature is not to make contracts, but to make laws that establish the policy of the state.'" *Id.* "And '[p]olicies, unlike contracts, are inherently subject to revision and repeal.'" *Id.*

"To overcome the presumption, there must be a 'clear indication' that the legislature intended to create contractual rights enforceable against the government." *Am. Bankers*, 932 F.3d at 1381 (quoting *Nat'l R.R.*, 470 U.S. at 465-66). "The Supreme Court has recognized evidence of an intent to contract where a statute 'provide[s] for the execution of a written contract *on behalf of the United States*' or 'speak[s] of a contract' with the United States." *Id.* (quoting *Nat'l R.R.*, 470 U.S. at 467 (emphasis in original)).

"To determine whether a statute gives rise to a contractual obligation," courts "first look to the language of the statute." *Am. Bankers*, 932 F.3d at 1382 (citing *Nat'l R.R.*, 470 U.S. at 466; *Dodge v. Bd. of Educ.*, 302 U.S. 74, 78 (1937)). The text of the ARPA section at issue does not contain any reference to a contract:

> The Secretary of Agriculture shall use . . . not less than 5 percent
> of the total amount of funding provided under subsection (a)
> [$1,010,000,000] *to provide financial assistance* to socially
> disadvantaged farmers, ranchers, or forest landowners that are
> former farm loan borrowers that suffered related adverse actions or

> past discrimination or bias in Department of Agriculture programs,
> as determined by the Secretary.

ARPA § 1006(b)(5) (emphasis supplied).  The legislative text similarly does not refer to any contractual undertakings by SDFs or refer to a mutual exchange of consideration with SDFs as a precondition for receiving this "financial assistance."  *See id.*  This provision of ARPA does not contain a "clear indication" that Congress intended to create enforceable contractual rights against the Government.  *See Am. Bankers*, 932 F.3d at 1381 (quoting *Nat'l R.R.*, 470 U.S. at 465-66).  The Boyds' allegations of their participation in the legislative process are not sufficient.  *See Bay View*, 278 F.3d at 1266.  Accordingly, the Boyds fail to overcome the presumption that the enactment of ARPA section 1006(b)(5) did not create an implied-in-fact contract with them.  *See Am. Bankers*, 932 F.3d at 1381; *see also Schism v. United States*, 316 F.3d 1259, 1274-75 (Fed. Cir. 2002) (*en banc*) (entitlement to military and civilian pay and benefits is controlled by "the statute and regulations governing these benefits," not "ordinary contract principles").

      B.    There Is No Unambiguous Offer And Acceptance In Section 1006

The Boyds' claim in count III also fails for lack of an unambiguous offer and acceptance. The complaint alleges that the Boyds "communicated that, if the U.S. Government provided relief in ARPA for SDFs who had suffered USDA discrimination in the past, then they would not pursue such relief via litigation."  Compl. ¶ 72.  The complaint further alleges that "[t]he Boyds made this offer clear in their conversations with government officials, including Senator Cory Booker and President Biden."  *Id.* ¶ 73.  Finally, the complaint alleges that the Boyds "did not litigate meritorious discrimination claims they could have brought against the U.S. Government" in "reliance" on ARPA section 1006.  *Id.* ¶ 76.

The purported offer alleged by the Boyds is vague and nonspecific. For example, the complaint includes allegations that Mr. Boyd "began litigating discrimination claims against USDA in 1984," and that Mrs. Boyd "began litigating discrimination claims against USDA in 2011." Compl. ¶ 67. Although the Boyds *have* been litigating discrimination claims against USDA, they do not allege any facts concerning the purported basis of any *other* discrimination claims that they *have not* asserted. The Boyds also do not allege that their offer included a guarantee that they would receive compensation, any particular amount of compensation, or any compensation within any particular amount of time. In the absence of such facts, the purported offer by the Boyds not to assert unspecified discrimination claims based upon unspecified transactions over unspecified periods of time in exchange for unspecified possible compensation is not sufficient to satisfy the requirements for an offer.

The allegation that Congress accepted a contract through the enactment of section 1006(b)(5) is similarly ambiguous. The enactment of the legislation required passage by both houses of Congress. The Boyds do not allege that the entire Congress knew about their purported offer, and the ARPA section at issue does not refer to the Boyds or any purported offer. *See* ARPA § 1006(b)(5). Moreover, the ARPA section at issue did not specify the amount of any compensation for the Boyds or any particular SDF, leaving it for "the Secretary" to "determine" the amount of any "financial assistance" for each eligible SDF. ARPA § 1006(b)(5). The ARPA section at issue also did not specify the total amount of compensation for all SDFs – Congress authorized the Secretary to provide financial assistance for SDFs totaling anywhere from $50.5 to $808 million, a wide range of discretion.[3] *Id*. § 1006(a)-(b).

---

[3] In ARPA, Congress appropriated a total of $1.01 billion for USDA assistance and support in the entirety of section 1006, of which amount not less than $202 million was

Under these circumstances, the enactment of ARPA section 1006(b)(5) by Congress cannot be construed as unambiguous acceptance of a contractual offer by the Boyds.

      C.    <u>There Was No Consideration Exchanged For Congress Enacting Section 1006</u>

Count III also fails for lack of consideration. *See Crewzers*, 741 F.3d at 1382. The Boyds do not make any well-pleaded allegations indicating that they offered to waive a previously unasserted discrimination claim, nor did ARPA section 1006(b)(5) extinguish any legal right that they might have possessed prior to its enactment. *See* ARPA § 1006(b)(5). Accordingly, the Boyds remained free to litigate any previously unasserted discrimination claims notwithstanding the enactment of ARPA. *See id.* The purported offer by the Boyds not to assert discrimination claims based upon unspecified transactions over unspecified periods of time, in exchange for unspecified possible compensation at an unspecified time, particularly without any release or extinguishment of the claims, is too vague to constitute valid consideration. *See Crewzers*, 741 F.3d at 1383 ("It is axiomatic that a valid contract cannot be based upon the illusory promise of one party") (citation omitted). Count III should be dismissed for this additional, independent reason.

<u>CONCLUSION</u>

      For these reasons, we respectfully request that the Court dismiss the entire complaint pursuant to Rule 12(b)(6).

                        Respectfully submitted,

                        BRIAN M. BOYNTON
                        Principal Deputy Assistant Attorney General

                        PATRICIA M. McCARTHY
                        Director

---

appropriated for other purposes. ARPA §§ 1006(a), 1006(b)(1)-(4); *see also* IRA § 22007 (amending ARPA § 1006 and appropriating additional funds).

                                       s/ Franklin E. White, Jr.
                                       FRANKLIN E. WHITE, JR.
Assistant Director

                                       s/ Douglas G. Edelschick

Of Counsel:

JUAN CARLOS ALARCON
Deputy Assistant General Counsel
Office of General Counsel
Department of Agriculture
1400 Independence Ave., SW
Washington, DC 20250-1400

March 10, 2023

DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 353-9303

Attorneys for Defendant